1   Geoffrey Groshong
    WA Bar No. 6124
2   Groshong Law PLLC
    600 Stewart Street, Suite 1300
3   Seattle, Washington  98101
    geoff@groshonglaw.com
4   206.508.0585 telephone

5   Counsel for Sortis Holdings, Inc.
    Admitted *Pro Hac Vice*
6

7

8               UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF OREGON
9

10  In re                                  Case No. 24-33149-thp7

11  SORTIS HOLDINGS, INC.,                 SORTIS HOLDINGS, INC.'S ANSWER TO
                                           INVOLUNTARY CHAPTER 7
12          Debtor.                        BANKRUPTCY PETITION

13

14  I.      INTRODUCTION

15          Sortis Holdings, Inc., a for-profit corporation, organized under the laws of the State of

16  Delaware, and the putative debtor ("Sortis"), answers the Involuntary Petition Against a Non-

17  Individual [Dkt. # 1] (the "Petition") under Chapter 7, filed on November 12, 2024 by GEC

18  Fellow Barber Fund I LP, Scott Kasen, Gary Furst, and George Kassapakis (collectively, the

19  "Petitioners").  As set out in the Complaint (defined in paragraph 1), and as discussed below, the

20  claims of each of the four Petitioners are subject to bona fide disputes as to liability and amount,

21  and the Petitioners filed the Petition in bad faith.  In response, Sortis requests that the Court

22  suspend this case, pending resolution of the Lawsuit (also defined in paragraph 1), then

23  recommence the case, dismiss the Petition, and award attorney fees, costs, damages, and punitive

24  damages to Sortis.

25  ///

26  ///

1  II.     FACTS

2      1.     The factual basis for  dismissal of the Petition as to Petitioners GEC Fellow

3  Barber Fund I LP, Scott Kasen, and Gary Furst is set forth in the complaint captioned "Sortis

4  Holdings, Inc., Plaintiff, -against- Sam Buffa, Generation Equity Capital, LLC, GEC Fellow

5  Barber Fund I, LP, Scott Kasen, Luis Loboguerrero, Jacob Furst, individually and in his capacity

6  as guardian for S.F., a minor, Eric Alina, in his capacity as guardian for D.A., L.A., and N.A.,

7  each a minor, Gary Furst, and Gary Furst and Ethel Furst, JTWROS, Defendants" (the

8  "Complaint"), filed in the Supreme Court of the State of New York, County of New York, on

9  December 6, 2024, commencing the "Lawsuit."  A true copy of the filed Complaint is attached

10  as Exhibit 1.

11      2.     Petitioner George Kassapakis is not a party to the Complaint.  Kassapakis asserts

12  a claim of $40,000.00 based on a "Merger Agreement dated July 22, 2022."  Petition, at Part 3,

13  question 13.  However, in an accord and satisfaction, Kassapakis accepted $30,000 to resolve

14  lease issues, and then accepted equipment from Sortis, with a book value of $65,083 in full

15  resolution of his $40,000 claim. Kassapakis now has this equipment in his premises, which he

16  has leased to his new tenant, the coffee shop presently operating as One Moto Café, at 1642 NE

17  Sandy Boulevard, Portland, Oregon.  The equipment and its book value are listed on the attached

18  Exhibit B.

19      3.     When he signed the Petition, in an act of bad faith, Kassapakis wrongfully

20  ignored the value of the equipment he had already accepted in his accord and satisfaction with

21  Sortis.

22  III.    DISCUSSION

23      4.     11 U.S.C. § 303(b) provides that an involuntary case petition may be commenced

24  by the filing of a petition under chapter 7 or 11

25      [B]y three or more entities, each of which is either a holder of a claim against
    such person **that is not contingent as to liability or the subject of a bona fide**
26      **dispute as to liability or amount**…

SORTIS HOLDINGS, INC.'S ANSWER TO INVOLUNTARY CHAPTER
7 BANKRUPTCY PETITION - 2

**GROSHONG LAW PLLC**
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

1 11 U.S.C. § 303(b)(1) (emphasis added).

2   5.  11 U.S.C. 303(i) provides that

3 If the court dismisses a petition under this section other than on consent of all
4 petitioners and the debtor, and if the debtor does not waive the right to judgment
under this subsection, the court may grant judgment—

5  (1) against the petitioners and in favor of the debtor for—

6   (A) costs; or

7   (B) a reasonable attorney's fee; or

8  (2) against any petitioner that filed the petition in bad faith, for—

9   (A) any damages proximately caused by such filing; or

10   (B) punitive damages.

11   6.  As shown in the Complaint, the claims of Petitioners GEC Fellow Barber Fund I

12 LP, Scott Kasen, and Gary Furst are subject to bona fide dispute as to liability and amount and

13 thus none of them can be a petitioning creditor under 11 U.S.C. § 303(b). And each of them

14 caused the Petition to be filed in bad faith.

15   7.  Kassapakis' claim is subject to a bona fide dispute as to liability and amount.

16 Accordingly, Kassapakis cannot be a petitioning creditor under 11 U.S.C. § 303(b). Kassapakis

17 filed the Petition in bad faith, because he failed to account for the $65,083 value of equipment

18 from Sortis that he accepted in full satisfaction of a purported $40,000 debt. Moreover,

19 Kassapakis further demonstrated his bad faith, by signing the petition without first making any

20 demand to Sortis for payment.

21   8.  On dismissal, each of the Petitioners shall be subject the terms of 11 U.S.C. §

22 303(i), in an amount to be established.

23   9.  11 U.S.C. § 305 provides that

24 The court, after notice and a hearing, may dismiss a case under this title, or may
25 suspend all proceedings in a case under this title, at any time if—

26  (1) the interests of creditors and the debtor would be better served by such
dismissal or suspension;

SORTIS HOLDINGS, INC.'S ANSWER TO INVOLUNTARY CHAPTER
7 BANKRUPTCY PETITION - 3

**GROSHONG LAW PLLC**
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

1   11 U.S.C. § 305(a)(1).

2        10.    Resolution of the Complaint will aid this Court in determining whether the claims

3   of Petitioners GEC Fellow Barber Fund I LP, Scott Kasen, and Gary Furst are subject to bona

4   fide disputes as to liability and amount, and Sortis' affirmative claims against the Petitioners

5   would be resolved as well.  To the extent these parties legitimately believe that Sortis owes them

6   anything, they can file counterclaims in the Lawsuit.  Should they prevail, by seeking dismissal,

7   they can pursue collection, free from the inconvenience of bankruptcy's complex rules and

8   timelines, let alone the claims of other creditors and the automatic stay and priority rules at

9   11 USC §§ 362 and 507.  Thus, suspending this proceeding, pending resolution of the Lawsuit,

10  will be in the best interests of the Petitioners, including Kassapakis, other creditors, and Sortis.

11  IV.    CONCLUSION

12        For the reasons set forth above, the Court should suspend this case pending resolution of

13  the Complaint.  Following resolution of the Complaint, the Court should recommence this case

14  and dismiss the Petition, grant judgment against the Petitioners because the claims of the

15  Petitioners are subject to bona fide dispute as to liability or amount, find that each of the

16  Petitioners filed the Petition in bad faith, and award Sortis its damages or punitive damages

17  under 11 U.S.C. § 303(i) in an amount to be established.

18  V.    RELIEF SOUGHT

19        Sortis respectfully requests that the Court enter an order granting the following relief:

20  1.    Suspending this action pending resolution of the Complaint in the Supreme Court
        of the State of New York, County of New York;
21

22  2.    Setting off the value of Sortis' equipment held by Kassapakis against the claim
        Kassapakis asserted in the Petition;

23  3.    Recommencing this case following resolution of the Complaint;

24  4.    Dismissing the Petition because the claims of each of the Petitioners are subject to
        bona fide dispute as to liability or amount so that the Petition fails under
25      11 U.S.C. § 303(b);

26  ///

SORTIS HOLDINGS, INC.'S ANSWER TO INVOLUNTARY CHAPTER
7 BANKRUPTCY PETITION - 4

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

5.      Finding that the Petition was brought in bad faith by the Petitioners; and

6.      Awarding Sortis its damages or punitive damages under 11 U.S.C. § 303(i).

DATED this 6th day of December, 2024.

GROSHONG LAW PLLC


/s/ Geoffrey Groshong
Geoffrey Groshong
WSB No. 6124

Counsel for Sortis Holdings, Inc.
Admitted *Pro Hac Vice*

GOTTLIEB LAW


/s/ Michael B. Gottlieb
Michael B. Gottlieb
OSB No. 031025

Local Counsel for
Sortis Holdings, Inc.

SORTIS HOLDINGS, INC.'S ANSWER TO INVOLUNTARY CHAPTER
7 BANKRUPTCY PETITION - 5

**GROSHONG LAW PLLC**
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

In re Sortis Holdings, Inc.
Case No. 24-33149-thp7

Exhibit 1

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

Case 24-33149-thp7   Doc 14   Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------ x
    :
SORTIS HOLDINGS, INC.,    :
    :
        *Plaintiff*,    :
    :
    -against-    :    **COMPLAINT**
    :
SAM BUFFA, GENERATION EQUITY CAPITAL,    :
LLC, GEC FELLOW BARBER FUND I, LP, SCOTT    :    Index No.: _____
KASEN, LUIS LOBOGUERRERO, JACOB FURST,    :
individually and in his capacity as guardian for S.F., a    :
minor, ERIC ALANI, in his capacity as guardian for    :
D.A., L.A., and N.A., each a minor, GARY FURST, and :
ETHEL FURST,    :
    :
        *Defendants*.    :
    :
------------------------------------------ x

        Sortis Holdings, Inc. ("Sortis") files this action against Sam Buffa ("Buffa"); Generation

Equity Capital LLC ("GEC"); GEC Fellow Barber Fund I, LP; Scott Kasen; Luis Loboguerrero;

Jacob Furst, individually and in his capacity as guardian for S.F., a minor; Eric Alani, in his

capacity as guardian for D.A., L.A., and N.A., each a minor; Gary Furst; and Ethel Furst, and

alleges as follows:

## INTRODUCTION

        1.    This case arises from the fraud and duplicity of the owners of Fellow Barber, a

boutique barbershop chain.

        2.    Sortis, owner of Rudy's Barbershops, a larger, successful chain, purchased Fellow

Barber from a consortium of founders and shareholders for over $22 million, paid in promissory

notes and Sortis shares.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

Case 24-33149-thp7    Doc 14    Filed 12/06/24

3.      The promissory notes were secured by Fellow Barber's shares and intellectual property, with GEC acting as the collateral agent for the noteholders.

4.      The acquisition of Fellow Barber was strategically important for Sortis as it substantially expanded Sortis's footprint nationally and in New York, the financial center that was part of Sortis's acquisition, rollup, and financing plans.

5.      The acquisition also procured the services of Buffa, Fellow Barber's co-founder and CEO.  Buffa was well connected in the barbershop market nationally and promised to lead the Sortis barbershop group and execute on its strategic plan to acquire and merge several additional barbershop chains.

6.      As part of the acquisition, Buffa received millions of Sortis shares and signed an employment agreement with Sortis that named him General Manager of all Sortis's barbershops.

7.      The employment agreement contained restrictive covenants prohibiting Buffa from competing with Sortis and its affiliates during his employment and for one year thereafter.

8.       It soon became clear that Fellow Barber's financial records were misstated, and the projections GEC and Buffa had used to induce Sortis to pay $22 million for Fellow Barber were misleading and designed to obscure that they were unsupportable.

9.      Sortis tried to address the situation by cutting costs at Fellow Barber, seeking financing to pay off the notes, and even unwinding the merger.  GEC and Buffa purported to assist with these efforts, but in fact were conspiring to maneuver Sortis into default so that they could foreclose on their collateral and buy back Fellow Barber on the cheap and lever the situation to acquire Rudy's Barbershops from Sortis.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 24-33149-thp7    Doc 14    Filed 12/06/24

10.     After declaring a default on the promissory notes, GEC purported to exercise its security interests in Fellow Barber and, with Buffa's assistance, seized absolute control of the company and its assets, and proceeded to operate Fellow Barber to the exclusion of Sortis.

11.     Four months later, GEC, on behalf of the note holders, held a commercially unreasonable UCC sale in which GEC repurchased Fellow Barber for $100,000—barely two years after selling it for $22 million.  Certain of the note holders then filed an involuntary bankruptcy petition against Sortis, seeking recovery of the alleged deficiency on their notes.

12.     Subsequent to the purported UCC sale, GEC failed to notify Sortis of the sale price and any accounting on the notes to show the outstanding balance of the debt.  Sortis learned of the purported outcome of the sale only when a GEC investor called counsel for Sortis to demand payment of $2 million from Sortis's principal for satisfaction of the unstated balance purportedly due under the notes.

13.     After GEC completed its commercially unreasonable UCC sale, Buffa abandoned his employment with Sortis and worked directly for Fellow Barber.

14.     Buffa now competes directly with Rudy's Barbershops—flouting his restrictive covenants—armed with knowledge of Sortis's proprietary information, including its business model, competitive strategies, and strategic growth plan.

15.      Sortis brings this case to seek damages for the commercially unreasonable UCC sale and Buffa's disloyal conduct, to enjoin GEC and the note holders from pursuing the alleged deficiency on the notes, to enjoin Buffa from continuing to unlawfully compete against Sortis, and to compel Buffa to disgorge Sortis's confidential information.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction under CPLR §§ 301-302.

17.     Venue is appropriate under CPLR 501 and 503.

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7     Doc 14     Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

18.     Each Defendant transacts business and otherwise maintains significant contacts in New York related to the events set forth herein.  The pledge and security agreements through which Defendants purported to exercise their security interests grant exclusive jurisdiction to New York state and federal courts and require the application of New York law.  Buffa's employment agreement with Sortis does the same.

## **THE PARTIES**

19.     Sortis is Delaware company having its principal place of business in Portland, Oregon.

20.     Buffa is an individual who, upon information and belief, is domiciled in Brookhaven, New York.

21.     GEC is a Massachusetts limited liability company that, on information and belief, has its principal place of business in Boston, Massachusetts.

22.     GEC Fellow Barber Fund I, LP is a Delaware limited partnership that, upon information and belief, has its principal place of business in Boston, Massachusetts.  GEC Fellow Barber Fund I is a holder of a promissory note in connection with the merger of Fellow Barber into Sortis (a "Noteholder").

23.     Scott Kasen is an individual and Noteholder who, upon information and belief, is domiciled in New York, New York.

24.     Luis Loboguerrero is an individual and Noteholder who, upon information and belief, is domiciled in Coral Gables, Florida.

25.     Jacob Furst is an individual and Noteholder, individually and as guardian for S.F., a minor, and, upon information and belief, is domiciled in Brooklyn, NY.

4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

26.     Eric Alani, is an individual and guardian for Noteholders D.A., L.A., and N.A., each a minor, and upon information and belief, is domiciled in Chappaqua, NY.

27.     Gary Furst is an individual and Noteholder, individually and together with Ethel Furst as joint tenants with a right of survivorship, who, upon information and belief, is domiciled in Boston, Massachusetts.

28.     Ethel Furst is an individual and Noteholder together with Gary Furst as joint tenants with a right of survivorship, who, upon information and belief, is domiciled in Boston, Massachusetts.

## FACTS

**I.     Sortis Buys Fellow Barber for over $22 Million**

29.     Sortis is an investment holding company specializing in the hospitality sector.

30.     Its holdings include the successful boutique barbershop chain Rudy's Barbershops. Rudy's Barbershops presently operates 27 locations across the Pacific Northwest, New York, and Georgia.

31.     Sortis sought to expand its barbershop holdings, including by strengthening its presence in New York and expanding into other states.

32.     In July 2022, Sortis acquired Fellow Barber, a boutique barbershop chain presently operating in 11 locations across New York and California.

33.     Buffa, Fellow Barber's co-founder and CEO, has extensive connections within the barbershop industry.

34.     Sortis discussed its strategic plans extensively with Buffa.  Buffa told Sortis he could facilitate Sortis's strategic plan by, among other things, leading the acquisition of multiple additional boutique barbershop chains.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

Case 24-33149-thp7    Doc 14    Filed 12/06/24

35.     Thus, the purchase of Fellow Barber advanced Sortis's strategic interest by expanding Sortis's presence in New York, establishing a presence in California, and positioning Sortis to execute additional acquisitions.

36.     On July 14, 2022, Sortis executed a merger agreement (the "Merger Agreement") under which FSC Barber LLC ("FSC Barber"), the operating company for Fellow Barber, was merged into SOHI Fellow Barber, Inc. ("SOHI Fellow Barber"), a new entity wholly owned by Sortis.

37.     FSC Barber's shareholders were comprised of its co-founders, Buffa and William Tigertt, and various entities and individuals associated, on information and belief, with GEC, including the Noteholders.

38.     As consideration for the merger, Sortis paid $22,360,812 to FSC Barber's shareholders in the form of (i) $9,879,373 in promissory notes issued (the "Notes") to the Noteholders for their holdings in FSC Barber Series A-1 Units and (ii) $12,351,439 of Sortis shares distributed to holders of FSC Barber Class A and Class B Common Units.

39.     Buffa received 3,325,801 of the 5,465,238 Sortis shares (over 60%) distributed as part of the merger.

40.     Pursuant to a Security Agreement dated July 14, 2022 (the "Security Agreement"), GEC acted as collateral agent for the Noteholders.  The Noteholders' collateral rights are defined in a series of interlocking agreements, including the Security Agreement, a Pledge Agreement (the "Pledge Agreement"), and a Collateral Agent Agreement (the "Collateral Agent Agreement"), all of which are dated July 14, 2022.  The rights and remedies of the parties to these agreements are governed by New York law.

41.     The Notes matured on or about January 14, 2024.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

42.     The Notes defined events of default to include, in relevant part, the following:  (i) "[Sortis] fails to make the final payment in full by the Maturity Date, provided that if [Sortis] is making good faith efforts to acquire the necessary funds to pay the amounts due, an Event of Default will not be deemed to have occurred unless any outstanding principal and accrued interest remains unpaid on the 90th day following the Maturity Date" and (ii) "Maker fails to pay, becomes insolvent or unable to pay, or admits in writing an inability to pay [Sortis's] debts as they become due…."

43.     The Security Agreement imposes a further thirty-day cure period following the occurrence and delivery of a written notice of default.

44.     The Notes were signed by Sortis's CFO, Ryan Smith.  The Security Agreement requires that all notices issued to Sortis be delivered to Smith.

## II.     Buffa Agreed Not to Compete with Sortis During or After His Employment

45.     Buffa signed an employment agreement with Sortis dated July 14, 2022 (the "Employment Agreement") that was inextricably tied to the merger, specifically commencing the initial two-year term upon consummation of the merger.

46.     The Employment Agreement greatly expanded Buffa's responsibilities from the CEO of a boutique barbershop chain to the General Manager of Sortis's entire barbershop division and Vice President of Sortis.  At that time, Sortis owned barbershops in 43 locations – 31 for Rudy's Barbershops and 12 for Fellow Barber.

47.     In his Employment Agreement Buffa repeatedly and expressly acknowledged that his "unique role," "specialized training" and "unfettered access to [Sortis's] Confidential Information…create[d] a fiduciary duty of trust and confidence" between him and Sortis.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

Case 24-33149-thp7    Doc 14    Filed 12/06/24

48.     In recognition of Buffa's pivotal role in the company, including the breadth of confidential information Buffa would (and did) obtain concerning Sortis's competitive advantages and business strategies, the Employment Agreement contained restrictive covenants that prevented Buffa from competing against Sortis during his employment and for one year thereafter.

49.     Specifically, the Employment Agreement

a.     prohibited Buffa from sharing Sortis's confidential information with any third party without the prior written consent of Sortis's board of directors;

b.     required Buffa to return all Sortis confidential information within 48 hours of any termination of his employment;

c.     prohibited Buffa from providing managerial or executive services to any direct Sortis competitor;

d.     prohibited Buffa from diverting business or opportunities from Sortis;

e.     prohibited Buffa from soliciting Sortis employees or vendors and from authorizing, soliciting, or assisting any third party from doing the same; and

f.     prohibited Buffa from soliciting or sharing negative or adverse information about Sortis or its affiliates.

50.     The Employment Agreement also required Buffa to return all Sortis documents and information within 48 hours of the termination of his employment.

## III.    Buffa Obtains Highly Confidential Sortis Information

51.     After Buffa joined Sortis, Sortis paid to send Buffa and his team around the United States to research and analyze the barbershop market and develop a plan for the strategic acquisition of a portfolio of barbershop companies.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7   Doc 14   Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

52.     As part of this research, Buffa developed extensive due diligence documentation and other analysis concerning barbershop companies around the United States, and he developed a comprehensive understanding of Sortis's growth plans for brand acquisition in key markets throughout the U.S.

53.     Buffa even negotiated multiple purchase and sale agreements for such companies on behalf of Sortis.

## IV.   The Business Fails to Perform

54.     Following the merger, Fellow Barber's performance fell dramatically short – less than 50% of its original revenue projections.

55.     Sortis sought to trim employee overhead and considered selling Fellow Barber outright.  GEC and Buffa urged Sortis to pursue alternative approaches.

56.     Accordingly, Sortis agreed to work with Buffa and GEC to pursue two potential solutions in parallel, each of which was premised upon a full unwind of the merger such that Fellow Barber would be returned to its prior owners, the Notes would be cancelled, and Sortis's stock would be returned to it.

57.     *First*, Sortis tasked Buffa with searching for outside investors to contribute capital to repay the Notes.  As a Vice President at Sortis responsible for running its barbershop division, Buffa was an ideal person to lead Sortis's funding efforts.  He readily accepted the responsibility and indeed advocated for the assignment, stressing his industry contacts and a desire to stabilize Sortis's barbershop holdings.

58.     *Second*, while Buffa was purportedly searching for investors, Sortis approached GEC with an alternative solution: unwinding the merger and returning Fellow Barber to its original owners.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

Case 24-33149-thp7    Doc 14    Filed 12/06/24

59.     GEC professed a willingness to unwind the merger, but then spent months negotiating with Sortis without any agreement being reached because GEC insisted that it would take Fellow Barber back only if Sortis also agreed to sell Rudy's Barbershops as part of the unwind at a highly discounted, unreasonably low valuation.

60.     At first, GEC led Sortis to understand that it intended to solicit third-party investment in the barbershops after the unwind, and Sortis provided substantial financial data and other confidential information to assist GEC in soliciting third-party investors to facilitate this strategy.

61.     As part of this seemingly shared goal, Fellow and GEC created financial analyses that reflected a market value for Fellow Barber well above the outstanding debt.

62.     GEC repeatedly represented to Sortis that there was market interest for the barbershops and that it was close to a deal with multiple potential third parties.

63.     Upon information and belief, GEC entered purchase and sale agreements with at least two such third parties that GEC viewed as sufficient to at least satisfy the debt.

64.     Ultimately, however, after obtaining Sortis's confidential information, GEC revealed that it was soliciting third parties not as investors but as buyers so that GEC flip the barbershops including Rudy's Barbershops following the unwind for a handsome profit.

## V.     GEC Fails to Properly Serve Notice of Default

65.     In or around March 2024, GEC's approach to Sortis changed.

66.     On March 5, 2024, GEC purported to serve a notice of default to Sortis ("Notice of Default").

67.     However, that Notice of Default was premature because the 90-day grace period for nonpayment did not elapse until April 14, 2024.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

Case 24-33149-thp7    Doc 14    Filed 12/06/24

68.     To try to circumvent this grace period, GEC made two false assertions in the Notice of Default.

69.     First, it asserted that Sortis was not making good faith efforts to obtain the funding necessary to repay the Notes.  This claim was patently false, since Sortis was actively negotiating *with GEC* to structure an unwind that included payment/forgiveness of the Notes.  Furthermore, GEC knew that Buffa was tasked with locating third-party funding to satisfy the Notes.

70.     Second, the Notice of Default asserted that Sortis was unable to pay its debts as they came due, and that it had admitted this inability in writing.  While Sortis had acknowledged that it needed a transaction on the barbershops in order to pay down the Notes, Sortis was not insolvent and never acknowledged in writing an inability to pay its debts as they came due.

71.     Further, GEC failed to deliver the Notice of Default to Ryan Smith, the person designated for notice in the Security Agreement.  Instead, GEC mailed the Notice of Default to Sortis's CEO, Paul Brenneke, at an address he did not actively monitor.

72.     As a result of GEC's improper delivery, Sortis did not learn of GEC's Notice of Default until over a month later, when GEC began to take action on its collateral.

## VI.     GEC Seizes Total Control of Fellow Barber

73.     On April 11, 2024, GEC purported to exercise its proxy rights in Fellow Barber's stock to remove all Fellow Barber directors affiliated with Sortis.

74.     GEC sent Sortis a notice dated April 11, 2024, which stated that all persons affiliated with Sortis "have been removed from any position you held as officers, directors, employees, or consultants of SOHI Fellow Barber," and that "Sortis retains its ownership of the outstanding equity of SFB, but will no longer have any say in the operational, management, or financial decision of SFB."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 12/06/2024

75.     On April 15, 2024, GEC informed Sortis, "We now have full control of the company, and its bank accounts, however we do not have ownership of the business (or responsibility for its considerable obligations), which still falls with Sortis."

76.     With Buffa's help, GEC locked Sortis out of Fellow Barber's bank accounts and, through Buffa, asserted total control of Fellow Barber's day-to-day operations and assets, including its website, email accounts, and business records.

77.     When Sortis demanded access to Fellow Barber's email accounts, which Sortis owned and hosted at its expense on the Rudy's Barbershop Microsoft Exchange platform, Buffa refused, insisting that Sortis had lost its right to access Fellow Barber's accounts when its representatives were deposed from Fellow Barber's board of directors.

78.     In other words, despite claiming that Sortis still owned Fellow Barber and had full responsibility for its obligations, GEC seized absolute control of Fellow Barber and operated it to the exclusion of Sortis.

79.     At this same time, Fellow Barber's financial performance was improving.  On April 15, 2024, GEC told to Sortis that, in the month before GEC seized control, Fellow had achieved "near-record performance portfolio-wide over the past month in terms of both revenue and contribution margin."  As a result of this improving financial performance, GEC expected that Fellow could "start to stockpile" its cash and that its financial position would imminently begin to improve.

80.     Believing that Fellow Barber had turned the corner, GEC made one final offer to unwind the merger for $1 million.  Specifically, GEC offered to reclaim Fellow Barber, forgive the Notes, and return Sortis's $12.4 million in stock if Sortis paid it $1 million.  This offer

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

effectively acknowledged that Fellow Barber was worth at least $9 million given that the Notes were worth approximately $10 million.

## VII.    GEC Orchestrates a Commercially Unreasonable UCC Sale

81.    On June 21, 2024, GEC delivered a letter titled Notice of Disposition of Collateral by Public Auction - UCC Sale (the "UCC Sale Notice").

82.    The UCC Sale Notice was addressed to Sortis and SOHI Fellow Barber, plus one additional entity.

83.    While the UCC Sale Notice disclosed that the sale was to be conducted by an auctioneer, it did not identify any efforts by either GEC or that auctioneer to advertise the auction.

84.    Crafted to dissuade interest, the UCC Sale Notice painted a thoroughly unappealing picture of the assets and the sale.

85.    It stated that a sale would occur at the New York offices of GEC's lawyers. It did not identify or provide contact information for any investment bank or other third party retained to market the auction and instead instructed interested parties seeking additional information about the sale to contact GEC's lawyers.

86.    The UCC Sale Notice did not describe Fellow Barber's services, state the number of stores it operated, summarize its financial performance, or provide any other information about the underlying business.

87.    It identified the assets for sale as the shares of SOHI Fellow Barber and the attendant rights under the Pledge Agreement, but it offered no description of the shares or of Fellow Barber, did not provide a copy of the Pledge Agreement, and did not describe the rights provided therein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

88.     It notably omitted from the assets for sale the Noteholders' rights in Fellow Barber's intellectual property, even though it made clear that the Noteholders possessed such rights by disclosing the existence of the IP Security Agreement.

89.     Even though GEC had seized total control of Fellow Barber and had the full cooperation of its management, the UCC Sale Notice stated that "there is no warranty or representations relating to title, possession, quiet enjoyment, merchantability, fitness, or the like."

90.     The UCC Sale Notice generated discussions between counsel for GEC and Sortis during which GEC, through counsel, advised Sortis of its intention to bid for the collateral in an amount substantially equal to the value of the Notes.  GEC emphasized that it had no intention of litigating over any unpaid sum on the Notes.

91.     The intent and effect of these representations was to assure Sortis that a competitive bidding process would occur and that GEC, if it was the winning bidder, would pay fair value for Fellow Barber.

## VIII.  GEC Buys Fellow Barber for $100,000

92.     GEC conducted the sale on or about August 15, 2024, and then concealed its results from Sortis.

93.     It never told Sortis the auction had occurred, the identity of the winning bidder, or the purchase price.

94.     GEC never sent Sortis an accounting or other notice of the deficiency remaining on the Notes, nor did it send Sortis a demand for payment on the deficiency.

95.     Nor did it ever provide Sortis with an accounting identifying the indebtedness remaining under the Notes.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

96.     In October 2024, Sortis was made aware of the fact that Fellow Barber had been sold when an investor in GEC Fellow Barber Fund I, LP, a Noteholder, contacted Sortis without warning to demand a $2 million payment on the Notes, at first insisting that the result of the UCC sale—ostensibly a public sale—was somehow confidential and that Sortis was obliged to accept his representation that the sale proceeds were insufficient to repay the Notes.  Eventually, the investor disclosed to Sortis that GEC had purchased Fellow Barber for a $100,000 credit bid.

## IX.    GEC Forces Sortis into Bankruptcy

97.     On November 12, 2024, three of the Noteholders for whom GEC acted as collateral agent (Gary Furst, Jacob Furst, and GEC Fellow Barber Fund I, LP) filed a petition in the U.S. Bankruptcy Court for the District of Oregon, seeking to place Sortis in involuntary Chapter 7 bankruptcy so as to recover the purported $8,321,180.28 deficiency on their Notes.

98.     Upon information and belief, this petition was brought in bad faith as the next phase in GEC's coordinated strategy to extract additional value from Sortis by forcing it to sell Rudy's Barbershops for less than its fair market value.

## X.     Buffa Continues to Work for Fellow Barber in Direct Competition with Sortis

99.     Upon information and belief, Buffa continues to act as CEO of Fellow Barber.

100.    Upon information and belief, Buffa is now employed, directly or indirectly by GEC.

101.    Buffa has not returned Sortis' confidential information, including acquisition target diligence, market research and analyses.

102.    Upon information and belief, Fellow Barber and GEC are presently competing against Rudy's Barbershops and are pursuing (or intend to pursue) the Acquisition Targets and to take other actions to compete directly with Sortis and to capitalize on Sortis's strategic plans, which Buffa leaked to GEC.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

## CAUSES OF ACTION

### Count I
### Breach of Contract (against GEC and each of the Noteholders)

103.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

104.    The Notes are enforceable contacts between Sortis and the Noteholders.

105.    The Security Agreement is an enforceable contract between and among Sortis, the Noteholders, and GEC, as collateral agent for the Noteholders.

106.    The Notes define the circumstances in which the Noteholders may declare events of default.

107.    The Notes expressly state that an event of default based on the mere failure to pay amounts due under the Notes accrues 90 days after the maturity date.

108.    The Notes matured on or about January 14, 2024.

109.    The Security Agreement further provides that, once an event of default occurs, Sortis is entitled to a 30-day cure period following delivery of a written notice of default.

110.    GEC, on behalf of the Noteholders, served a notice of default on March 5, 2024— only 51 days after the maturity date.

111.    GEC's assertion in the Notice of Default that Sortis had not made good faith efforts to obtain funding for the Notes was objectively false and a naked attempt by GEC to circumvent the Notes' 90-day grace period.

112.    So, too, was GEC's assertion that Sortis was unable to pay its debts as they came due and that Sortis had admitted this inability in writing.

113.    This premature Notice of Default was issued knowingly and in bad faith.

114.    It deprived Sortis of nearly half of the three-month grace period to which it was contractually entitled, paving the way for GEC to seize control of Fellow Barber on April 11, 2024.

16

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

115.    Had GEC adhered to the terms of the Notes and Security Agreement, it could have served a notice of default no earlier than April 14, 2024—and it could have taken action on its collateral no earlier than May 14, 2024, providing Sortis with vital time to complete its unwind negotiations with GEC or take alternative actions to secure payment on the Notes.

116.    Additionally, the Security Agreement required that GEC deliver the Notice of Default to Ryan Smith.

117.    GEC did not address its Notice of Default to Ryan Smith, addressing it instead to Paul Brenneke, at a mailing address he did not actively monitor.

118.    As a result, Sortis did not learn of GEC's purported Notice of Default until April 11, 2024, when GEC notified Sortis that, pursuant to that Notice of Default, GEC had purported to exercise its security interests, voted out all Sortis-affiliated members of the Fellow Barber board of directors, terminated all Sortis-affiliated personnel's positions with Fellow Barber, and, in GEC's own words, had seized total control of "the operational, management, and financial decisions of [Fellow Barber] following the date hereof."

119.    These breaches have damaged Sortis in an amount to be determined at trial.

## Count II
### Commercially Unreasonable Sale (against GEC and each of the Noteholders)

120.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

121.    On August 15, 2024, GEC, as collateral agent for the Noteholders, purported to effectuate a sale of Fellow Barber under UCC 9-610.

122.    At that sale, GEC purchased Fellow Barber for a $100,000 credit bid.

123.    That sale was commercially unreasonable.

124.    When a secured creditor disposes of collateral, the UCC requires that [e]very aspect of a disposition, including the method, manner, time, place, and other terms, must be commercially

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

Case 24-33149-thp7   Doc 14   Filed 12/06/24

reasonable." UCC 9-610(b).  The secured creditor bears the burden of proving the commercial

reasonableness of the disposition.  UCC 9-626(a)(2).

125.    A disposition is commercially reasonable if it is made "in conformity with

reasonable commercial practices among dealers in the type of property that was the subject of the

disposition." UCC 9-627(b)(3).

126.    Additionally, a secured creditor that disposes of collateral must account to the

debtor for the proceeds of the disposition.  UCC 9-615(d).

127.    Here, GEC failed to make reasonable efforts to maximize the value of the auction

because it failed to follow standard procedures reasonably calculated to increase interest and

maximize value.

128.    Upon information and belief, neither GEC nor the auctioneer it retained made any

efforts to market the auction to potentially interested parties other than to the named recipients of

the UCC Sale Notice.

129.    Upon information and belief, GEC did not provide notice of the auction to the third

parties who had expressed interest in Fellow Barber during GEC's search for a third-party buyer

in connection with the unwind.

130.    Upon information and belief, GEC did not retain an investment banker to identify

and market the auction to potentially interested parties.

131.    The UCC Sale Notice was worded in such a way as to discourage recipients from

participating in the auction, providing no information about the collateral, no access to the

management team, and disclaiming representations and warranties.  Such information and access

was entirely within GEC's power to provide, since GEC had full cooperation of Fellow Barber's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

management, had seized absolute control of the company and its assets, and had been operating the company, directly or indirectly, for at least four months.

132.    GEC, through counsel, dissuaded Sortis from attending or participating in the auction by assuring Sortis that GEC intended to bid substantially the full value of the Notes and that it would reserved its rights as to any remaining deficiency but had no intention of litigating for repayment.

133.    By failing to advertise the auction to potentially interested parties and dissuading known interested parties from attending, GEC did not merely fail to exercise commercial reasonably efforts to maximize the value obtained in the sale—it virtually ensured that no competitive bidding would take place, paving the way for it to prevail on a $100,000 bid for a company that had recently sold for $22 million.

134.    GEC's misconduct converted what was ostensibly a public auction into, effectively, a private disposition.  As such a private disposition, GEC would have been precluded from purchasing the collateral as a matter of law because the SOHI Fellow Barber shares were not collateral of a kind customarily sold on a recognized market or the subject of widely distributed standard price quotations.  UCC 9-610(c).

135.    Further, GEC's $100,000 bid for the collateral was commercially unreasonable under any standard.

136.    Even after Fellow Barber had failed to meet the projections that were the basis of Sortis's acquisition, GEC marketed Fellow Barber to potential buyers as part of the contemplated unwind using valuation analyses that showed Fellow Barber had a market value well in excess of the outstanding balance on the Notes.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

137.    In July 2022, GEC and its affiliated entities and individuals had sold Fellow Barber to Sortis for $22,360,812.  After that sale, Fellow Barber's management team, assets, and business model remained substantially unchanged.  And at all times after April 11, 2024, Fellow Barber's assets and operations were exclusively in GEC's control.  Yet, in August 2024, GEC purchased Fellow Barber for $100,000—less than 0.5% of its prior value.

138.    But for GEC's misconduct, the UCC sale would have yielded a sum exceeding the value of the Notes.  As a result, the Noteholders are barred from pursuing collection of any deficiency owed to them.  UCC 9-626(a)(3).

139.    GEC's failure to provide notice of completion of the sale and an accounting for the proceeds further prevented Sortis from challenging the commercial reasonableness of the sale and disputing the alleged deficiency prior to the Noteholders' filing of an involuntary bankruptcy.

140.    Further, GEC's misconduct has caused and continues to cause foreseeable monetary injury to Sortis in an amount to be determined at trial.  UCC 9-625(b).

141.    The ongoing consequential damages incurred by Sortis exceed the value of the alleged deficiency under the Notes.

### Count III
### Breach of Contract (against Buffa)

142.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

143.    The Employment Agreement is an enforceable contract between Sortis and Buffa.

144.    Buffa has breached and continues to breach that contract by:

   a.    During his employment with Sortis, competing against Sortis and its interests by assisting GEC in maneuvering Sortis into a default on the Notes, by failing to diligently pursue alternative financing for the Notes that he

20

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.
20 of 24

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2

Case 24-33149-thp7   Doc 14   Filed 12/06/24

RECEIVED NYSCEF: 12/06/2024

agreed to seek, and by providing information and support to GEC so that it could pursue its own self-interests to the detriment of Sortis;

b.    By helping GEC to seize control of Fellow Barber—a company GEC itself insisted Sortis continued to own—by, among other things, turning over access to Fellow Barber's bank accounts and blocking Sortis's access to Fellow Barber's email accounts.

c.    Working for Fellow Barber following GEC's purchase of the business, thus placing himself in a managerial role at Fellow Barber substantially similar to the role he held at Sortis except that he now competes directly against Rudy's Barbershops, in violation of his Employment Agreement; and

d.    Failing and refusing to return Sortis' confidential information within 48 hours of the termination of his employment with Sortis.

145.    Buffa's breaches have caused—and continues to cause—Sortis monetary and non-monetary damages in amount to be determined at trial.

## Count IV
## Breach of Fiduciary Duty (against Buffa)

146.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

147.    Buffa occupied a unique and crucial role within Sortis, serving as CEO of Fellow Barber, a Vice President of Sortis, and the General Manager of Sortis's Barbershops division. Those roles made him the highest executive within Fellow Barber as well as the manager of all Sortis's barbershop assets—which at that time comprised some 31 store locations around the United States.

148.    Additionally, Sortis trusted Buffa with access to and implementation of its strategic plan to identify and roll up additional barbershop assets around the country.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 24-33149-thp7    Doc 14    Filed 12/06/24

149.    Buffa was highly compensated for those services.

150.    True to the terms of his Employment Agreement, Buffa was given unfettered access to Sortis's proprietary information, including its personnel and financial data as well as its strategic plan.

151.    Buffa's role within Sortis and Fellow Barber placed him in a uniquely powerful and sensitive position in representing Sortis to third parties, including potential investors as well as its creditors.

152.    These factors, individually and collectively, created a fiduciary relationship between Buffa and Sortis.

153.    Buffa, in his Employment Agreement, repeatedly and expressly acknowledged the existence of that fiduciary relationship and the bases for it.

154.    That fiduciary relationship obliged Buffa to act at all times in Sortis's best interest and to avoid even the potential for conflicts of interest.

155.    During his employment with Sortis, Buffa flagrantly breached this fiduciary duty, including by:

a.    Upon GEC's exercise of its purported voting rights on April 15, 2023, facilitating and acquiescing in GEC's seizure of total control of Fellow Barber's assets and day-to-day operations;

b.    Blocking Sortis from accessing Fellow Barber's email accounts and other business records; and

c.    Soliciting and inducing the participation of other Fellow Barber and Sortis employees, including Ryan Suddendorf, in this and other misconduct.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

156.    Buffa's breaches of his fiduciary duties harmed Sortis in a number of ways, including:

a.    crippling Sortis' ability to manage its assets,

b.    interfering with Sortis' ability to resolve its debts with GEC and the Noteholders,

c.    facilitating GEC's gross overreach of its rights as collateral agent for the Noteholders,

d.    enabling the commercially unreasonable sale of Fellow Barber as well as the ongoing attempt to wrest additional value from Sortis through a bad faith involuntary petition for bankruptcy, and

e.    causing grave harm to Sortis's reputation and prospective business dealings.

157.    Buffa's misconduct has damaged Sortis in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in the Sortis's favor and against Defendants as follows:

A.    Declaratory relief that GEC and the Noteholders are precluded from pursuing collection of any deficiency purportedly owed to the Noteholders;

B.    Damages against GEC and the Noteholders in an amount to be determined at trial;

C.    An injunction requiring Buffa to comply with the terms of his non-compete, including by ceasing all work, direct and indirect, for or on behalf of Fellow Barber, until at least August 15, 2025;

D.    An order compelling Buffa to disgorge Sortis's confidential information;

E.    Damages against Buffa in an amount to be determined at trial; and

F.    Such other and further relief as the Court deems just and proper.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

Case 24-33149-thp7    Doc 14    Filed 12/06/24

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 12/06/2024

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated:  December 6, 2024
         New York, New York

**RAKOWER LAW PLLC**

BY:   _/s/ Michael S. Rakower_
       Michael C. Rakower
       Travis J. Mock
       Daniel F. Gilpin
     260 Madison Ave., 15th Fl.
     New York, NY 10016
     (212) 660-5550
     mrakower@rakowerlaw.com
     tmock@rakowerlaw.com
     dgilpin@rakowerlaw.com

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

In re Sortis Holdings, Inc.
Case No. 24-33149-thp7

# Exhibit 2

| Item | FA Category | Location | End Date | Book Amount |
|------|-------------|----------|----------|-------------|
| OBS Tools | Retail Equipment | Motor Co | | 4,000.00 |
| OBS Cafe Equipment | Retail Equipment | Motor Co | | 1,714.00 |
| OBS Espresso Mac | Retail Equipment | Motor Co | | 5,941.00 |
| OBS Furniture | Office Furniture and Equipment | Motor Co | | 5,335.00 |
| OBS Espresso Mac | Retail Equipment | Motor Co | | 10,061.00 |
| OBS Display Equipment | Retail Equipment | Motor Co | | 9,000.00 |
| OBS Coffee Cart | Office Furniture and Equipment | Motor Co | | 3,862.00 |
| OBS Air Conditioner | Retail Equipment | Motor Co | | 3,886.00 |
| OBS Stumptown Equipment | Retail Equipment | Motor Co | | 11,284.75 |
| Check 10826 | Office Furniture and Equipment | Motor Co | 11/30/2028 | 10,000.00 |
| | | | | |
| | | | | 65,083.75 |