Geoffrey Groshong
WA Bar No. 6124
Groshong Law PLLC
600 Stewart Street, Suite 1300
Seattle, Washington  98101
206.508.0585 telephone
geoff@groshonglaw.com

Counsel for Sortis Holdings, Inc.
Admitted *Pro Hac Vice*

Michael Gottlieb, OSB 031025
PO Box 209
Lake Oswego OR  97034
Tel. 503.546.0498
Email michael@gottlieb-law.com

Local Counsel for
Sortis Holdings, Inc.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| In re: | Case No.: 24-33149-thp7 |
|---|---|
| SORTIS HOLDINGS, INC. | **DECLARATION OF PAUL BRENNEKE** |
| Alleged Debtor. | |

I, Paul Brenneke, being duly sworn, on oath, depose and state as follows:

1. I am over the age of 18 years and am competent to provide testimony as a witness in this matter.  Except as expressly set forth below, I make this declaration on the basis of my personal knowledge.  Terms not otherwise defined shall have the meanings assigned in the Motion for Order Requiring Petitioners to Post a Bond (the "Bond Motion")

2. The purpose of this declaration is to provide facts concerning the history and background of Sortis Holdings, Inc. d/b/a/ SOHI Brands ("SOHI"), its businesses, and its

Page 1 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

pending transactions so the Court may fully understand the stakes of this involuntary bankruptcy proceeding.

3.  I am the chairman of SOHI.

4.  SOHI is a corporation owned by approximately 400 shareholders, including the founders of businesses that SOHI acquired, as well as investors and stakeholders in those businesses who traded their equity in the original businesses for stock in the SOHI holding company. Currently, no single SOHI shareholder owns more than 13% of SOHI. For many of SOHI's subsidiaries' founders, their largest asset is the SOHI stock they acquired in exchange for their businesses.

5.  At the height of the COVID-19 pandemic, SOHI saw opportunity in the nation's economic crisis. Across the hospitality sector, beloved businesses were on the brink of collapse—devastated by forced closures, halted revenue, and mounting uncertainty. Realizing that it could apply its investment strategy to save jobs and stabilize businesses, SOHI moved decisively, acquiring or investing in 15 hospitality brands. Among the most notable were Bamboo Sushi, the nation's first certified sustainable sushi restaurant, and Rudy's Barbershop, a celebrated pioneer in urban barbershop culture.

6.  SOHI entered these transactions using various resources including contributions from SOHI's friends and family, the Sortis Rescue Fund—owned by its 125 individual investors—and targeted special purpose entities ("SPEs") with their dozens of individual investors. SOHI's investments in these hospitality brands ranged from minority stakes to full acquisitions. In most cases, SOHI retained founders to preserve the unique soul and leadership of each business. Against all odds, SOHI saved 1,500 jobs and approximately 100 tenancies—a tangible impact at a time when survival seemed impossible.

7.  As the pandemic stretched far longer and deeper than anyone could have predicted, SOHI's businesses endured immense strain. Their survival was made possible only through a combination of government support programs and line of credit advances from

Page 2 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

affiliates of Sortis Capital and Sortis Income Fund, the senior secured lender to several SOHI subsidiaries. Sortis Income Fund has the word "Sortis" in its name, but is in fact a distinct, $170 million private credit fund, owned by its approximately 800 individual investors who are its limited liability company members that is managed by Sortis Capital. SOHI's focus remained clear: stabilize its portfolio of businesses, protect their employees, and chart a path toward recovery.

8. By mid-2021, it was clear that while SOHI's brands had weathered the worst of the pandemic, they required additional capital to sustain operations and return to growth. In response, SOHI and the business founders elected to roll up its brands into wholly owned subsidiaries under SOHI. Together, the companies generated nearly $100 million in revenue, and provided the scale necessary to access capital markets financing opportunities. This was important because the recent dramatic rise in interest rates led to a nationwide shortage of capital. SOHI's subsidiaries' business concentration in Portland compounded SOHI's challenges because Portland has been so slow to bounce back from the pandemic.

9. In 2022, as SOHI executed its strategy, interest rates skyrocketed, sharply reducing valuations and disrupting private equity financing across the market. Undeterred, SOHI worked for over a year to acquire the Ace Hotel Group to serve as the flagship catalyst for SOHI's portfolio fundraise. In spite of market headwinds, SOHI got commitments from major industry players for its Ace acquisition and expansion.

10. However, SOHI's acquisition of the iconic Ace hotel brand encountered a major obstacle. An errant email during SOHI's due diligence disclosed that key Ace executives had surreptitiously started a venture to divert ACE Hotel's expansion opportunities into a shadow company that would compete with SOHI. SOHI initiated litigation in the Delaware Chancery Court and achieved a favorable outcome. Nonetheless, the damage had been done—by the time the transaction was scheduled to close, Ace's revenue had deteriorated by 40%. Capital providers, spooked by Ace's decline, pulled out. By October 2023, the deal had fallen

Page 3 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

apart, disrupting SOHI's planned funding that would have provided $20 million in anticipated working capital for the various SOHI businesses.

11. The collapse of SOHI's deal with Ace required SOHI to immediately shift its focus from growth to contraction. SOHI made tough but necessary business decisions to stabilize its financial affairs. SOHI reduced its corporate workforce by 40%, and it worked with its subsidiaries to close their unprofitable locations. While these moves were critical, the rapid contraction, layoffs, and cost cutting led to disappointments, litigation, and adverse media coverage.

12. In 2024, opportunists piled on, creating an adverse cycle of threats, litigation, and public attention throughout SOHI's restructuring process. SOHI systematically and successfully resolved most of its outstanding issues, though not the issues that have emerged in this involuntary bankruptcy case.

13. As part of its restructuring process, SOHI reorganized its businesses into three distinct branches as follows:

a. Restaurants, under the Sustainable Restaurant Group ("SRG") banner.

b. Health and beauty, anchored by Rudy's Barbershop and Fellow Barber.

c. Hotels, now refocused exclusively on the emerging ALUM brand.

14. In 2024, SOHI's restaurant division endured a difficult year but emerged with renewed strength. In the 4th quarter of 2024, SOHI raised $10.3 million from two institutional investors for a minority ownership of Bamboo Sushi, establishing a $50 million valuation for Bamboo Sushi. The value created in this single subsidiary validates SOHI's successful restructuring process. This new capital provided the fuel for growth across all SRG brands, positioning the group for expansion. By December 2024, SRG had closed its first acquisition, with three additional store openings planned for 2025.

///

///

Page 4 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

15. SOHI's health and beauty division has not fared as well as its restaurant division. In July 2022, SOHI acquired Fellow Barber ("Fellow")[1] for $22 million, with $9 million in debt, payable pursuant to notes issued to Petitioners GEC Fellow Barber Fund I, LP, Gary Furst, and Scott Kasen, as well as other various affiliated individuals. Generation Equity Capital, LLC ("GEC"), an entity run by Gary Furst,[2] is collateral agent for the noteholders. The balance of the purchase price was SOHI stock.

16. SOHI initially relied on Fellow Barber to pursue the agreed strategy of a national roll-up of regional barbershop brands. SOHI believed that Fellow would be a strong partner for this strategy. Fellow represented to SOHI that it had a profitable business with significant growth potential. Fellow's projections proved inaccurate. Upon auditor scrutiny, SOHI learned that Fellow's representation of its historical performance was based on faulty accounting.

17. By mid-2023, SOHI began working to unwind its Fellow transaction, a process complicated by the fact that SOHI had retained Fellow's management team, who, to preserve their personal equity, surreptitiously cooperated with GEC in its hostile re-acquisition of Fellow.

18. Since Fellow Barber's managers departure from employment at SOHI, SOHI has worked to rebuild its Rudy's Barbershop management team and operations, putting it in position for a sale, albeit at much lower prices than SOHI had hoped for. SOHI believes it can effectuate a sale that would generate enough proceeds to clean up Rudy's subsidiary balance sheet.

///

///

---

[1] Fellow Barber is not one of the four Petitioners, even though the name is similar to Petitioner GEC Fellow Barber Fund I LP. See Dkt. # 1.

[2] GEC, as defined, is not one of the four Petitioners who filed the Involuntary Petition, even though the defined name is similar. Gary Furst is a Petitioner. *See* Dkt. # 1

Page 5 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

19. The unseen benefit from Sortis' failed ACE acquisition is SOHI's hospitality management team and SOHI's ALUM startup. ALUM has emerged as SOHI's most promising venture. ALUM has acquired real estate and options to purchase real estate in some of America's leading college football towns, including Eugene, Oregon, Tuscaloosa, Alabama, Ann Arbor, Michigan and College Station, Texas. ALUM's concept is luxury condominiums that ALUM will operate as hotels when the condominium owners are absent. The plan is for each ALUM location to have a high-end private members' club, which should be the top meeting place in town for movers and shakers during home football games. During the remainder of the year, ALUM will provide luxury hotel accommodations, a rarity in many college towns.

20. ALUM raised direct capital in mid-2023, which allowed it to return investment capital to SOHI. In 2023, affiliates of Paul Brenneke placed additional ALUM funding, which allowed ALUM to continue to return capital to SOHI and provide a much needed lifeline to SOHI's other brands during SOHI's restructure.

21. ALUM is presently engaged in a $10 million equity fund raise and $55 million in debt financing for construction. ALUM's capital raise has attracted a bevy of nationally known investors, including owners of professional sports teams. In the near term, the ALUM capital raise should yield critical liquidity for SOHI which I project to be approximately $3 million.

22. Contemporaneously with the ALUM capital raise, SOHI is working on a sale of Rudy's Barbershop. SOHI is working on a term sheet with an East Coast competitor of Rudy's that has conducted substantial due diligence. I expect to have an executed term sheet by the end of 2024, with a first quarter 2025 closing. This will provide further balance sheet relief for SOHI.

///

///

///

Page 6 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

23. With SOHI's Bamboo Sushi raise complete and momentum building for its ALUM capital raise and sale of Rudy's, SOHI is now poised to resolve its remaining restructuring challenges and emerge as a healthy concern with strong growth prospects, backed by deep-pocketed institutional investors.

24. I would be happy to share further details of these pending transactions and opportunities with the Court subject to a confidentiality order that would prevent the Petitioners from using that information outside these proceedings. The Petitioners' counsel, and perhaps others, are aggressively recruiting other potential petitioning creditors to shore up the Involuntary Petition. Those efforts have already caused massive damage to SOHI's businesses. The pending transactions and opportunities described above are critical to SOHI's success, and I cannot risk public disclosure of details that Petitioners could use to further harass SOHI.

25. Against the positive backdrop summarized above, the Involuntary Petition imperils SOHI and may derail SOHI's subsidiaries' critical transactions at a pivotal moment. Rather than focusing my time and attention on business growth strategies such as investment, marketing, sales, and strategic partnerships, the Involuntary Petition has forced me into spending most of my time on defending SOHI and its subsidiaries by placating nervous managers and business counterparts, repeatedly explaining that we are dealing with an *involuntary* bankruptcy that is being vigorously contested and has *not* been granted, and that three of the Petitioners[3] spent six months trying to buy Rudy's Barbershops, and now, just two years after selling Fellow Barber to SOHI for $22,000,000, claim to have bought it back for just $100,000, a loss of $21,900,000. Then, out of the blue, they launched an involuntary bankruptcy in what appears to be a strategic attack on SOHI for a hostile takeover of Rudy's Barbershops. The fourth Petitioner, George Kassapakis, characterized as an unrepresented party by counsel for the other three Petitioners, settled twice with SOHI before the Involuntary Petition was filed, once in an

---

[3] GEC Fellow Barber Fund I LP, Scott Kasen, and Gary Furst.

Page 7 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

executed lease settlement, and a second time in a trade of furniture, fixtures and equipment for full satisfaction of debt, and is not a creditor of SOHI.

26. The legal fees and administrative costs associated with defending against the Involuntary Petition are already substantial, further diverting SOHI resources from ordinary course business purposes. These damages—compounded by the Petitioners' failure to meet and confer—have ambushed SOHI and seriously impair SOHI's ongoing restructuring and recovery efforts. Rudy's has already lost key employees due to media coverage of this involuntary bankruptcy case. Likewise, several of SOHI's subsidiaries' landlords now refuse to renew our leases.

27. The Involuntary Petition has put tens of millions of dollars in critical transactions at risk. Failure of the above-described transactions could trigger defaults across approximately 50 commercial leases, potentially leading to the closure of dozens of retail businesses and the risk of loss of hundreds of jobs—many in Portland, a city still struggling to recover from the pandemic.

28. GEC, on behalf of the three of the four Petitioners and related noteholders from their sale of Fellow Barber to SOHI, orchestrated a commercially unreasonable UCC sale of the shares of Fellow's holding company, SOHI Fellow Barber, Inc. If the Petitioners' true objective was to collect on a debt, surely they would have sought more than $100,000 at their UCC sale of an asset that they sold two years prior for $22,000,000, which is $21,900,000 more than the proceeds of the UCC sale. Surely they would have sent SOHI confirmation that their UCC sale had occurred, with an accounting of the proceeds and a request for payment of the deficiency. Surely they and their fellow noteholders from their $22 million sale to SOHI would at some point have reached out to me to confer on payment of the deficiency or, at the least, have sent a letter following their purported UCC sale to make a request or demand for payment. Surely they would have met and conferred with me prior to imperiling the reputation and creditworthiness and, indeed, the very survival of SOHI by filing the Involuntary Petition.

Page 8 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101

Because they did none of these things, it appears to me that the Petitioners did not file the Involuntary Petition for any good faith bankruptcy purpose, but for the bad faith purpose of crippling SOHI through this involuntary bankruptcy process and effectuating a hostile takeover of Rudy's Barbershops.

29.  In light of the immensely harmful consequences of the involuntary bankruptcy case—especially in the event of the Court denying the involuntary petition, I respectfully request that the Court sets a bond requirement of not less than $10 million. This sum reflects entry level into the middle range of potential damages that SOHI will suffer, and serves as a necessary safeguard to protect SOHI's businesses, creditors, employees, investors, and stakeholders if this disruption ends with devastating results.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury under the laws of the United States of America.

SIGNED:  December 20, 2024.

/s/ Paul Brenneke
Paul Brenneke
Chairman

*[The rest of this page intentionally left blank.]*

Page 9 of 11
Declaration of Paul Brenneke

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

## CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I served the foregoing DECLARATION OF PAUL BRENNEKE on the following:

Alan L. Braunstein, counsel for GEC Fellow Barber Fund I LP
abraunstein@riemerlaw.com; ahall@riemerlaw.com;ndailey@riemerlaw.com; mtoussaint@riemerlaw.com

JOSEPH A FIELD
joe@fieldjerger.com; jenny@fieldjerger.com

MICHAEL GOTTLIEB, counsel for Sortis Holdings, Inc.
michael@gottlieb-law.com

GEOFFREY GROSHONG, counsel for Sortis Holdings, Inc.
geoff@groshonglaw.com

TONY KULLEN, counsel for Malden Avenue Holdings, LLC
tkullen@fwwlaw.com; cmayfield@fwwlaw.com

KIMBERLEY HANKS McGAIR, counsel for Junie, LLC
kmcgair@fwwlaw.com; dfallon@fwwlaw.com; asmith@fwwlaw.com

DOUGLAS R PAHL, counsel for GEC Fellow Barber Fund I LP, Gary Furst, George Kassapakis, and Scott Kasen
dpahl@perkinscoie.com; rwolf@perkinscoie.com; docketpor@perkinscoie.com

US Trustee, Portland
USTPRegion18.PL.ECF@usdoj.gov

Justin D. Leonard, counsel for State of Oregon
justin.leonard@doj.oregon.gov

George Kassapakis
george.a.kass@gmail.com
3405 NE Cadet Ave, Portland, OR  97220

by the following indicated method or methods:

- [x] by **e-mailing** full, true, and correct copies thereof to the last known e-mail address of the recipient shown above, on the date set forth below, using the court's e-serve feature or e-mail; and/or

- [x] by mailing full, true, and correct copies thereof in a sealed, first-class postage-prepaid envelope, addressed to the recipient as shown above, the last-known address of the recipient, and deposited with the United States Postal Service at Seattle, Washington, on the date set forth below.

Page 10 of 11
Declaration of Paul Brenneke

**GROSHONG LAW PLLC**
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

The undersigned declares on penalty of perjury under the laws of the state of Washington that the foregoing statements are true and correct to the best of my knowledge.

Executed at Seattle, Washington, this 20th day of December, 2024.

*Kalen Daniels* (signature)

Kalen Daniels

Page 11 of 11
Declaration of Paul Brenneke

**GROSHONG LAW PLLC**
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON 98101