Douglas R. Pahl, OSB No. 950476
Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Email: dpahl@perkinscoie.com

Alan L. Braunstein, Esq.
Admitted p*ro hac vice*
RIEMER & BRAUNSTEIN LLP
100 Cambridge Street, 22nd Floor
Boston, Massachusetts 02114
Tel: (617) 880-3516
Email: abraunstein@riemerlaw.com

*Attorneys for Petitioning Creditors*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>SORTIS HOLDINGS, INC.,<br><br>            Alleged Debtor. | Bankruptcy Case No. 24-33149-thp7<br><br>**DECLARATION OF JACOB FURST IN SUPPORT OF PETITIONING CREDITORS' RESPONSE IN OPPOSITION TO THE MOTION TO LIMIT SCOPE** |

I, Jacob Furst, declare as follows:

1.      I am over the age of 18 and am competent to provide testimony as a witness in this matter. Except as expressly stated below, I make this declaration on the basis of my personal knowledge.

2.      I am a duly authorized representative of Petitioner GEC Fellow Barber Fund I LP ("GEC Fund"), as well as of Generation Equity Capital, LLC ("GEC"), the collateral agent under the Transaction Documents referenced below.

3.      GEC Fund, along with other parties, including Petitioners Gary Furst and Scott Kasen (GEC Fund, Gary Furst and Scott Kasen are jointly referred to as "Petitioners"), owned

PAGE 1-    DECLARATION OF JACOB FURST IN SUPPORT OF
PETITIONING CREDITORS' RESPONSE IN
OPPOSITION TO THE MOTION TO LIMIT SCOPE

170495558.1

preferred equity shares in a New York based barbershop chain called Fellow Barber. Petitioners were minority investors and did not operate or control Fellow Barber. Fellow Barber was founded and operated by Sam Buffa and William Tiggertt.

4.     Pursuant to a series of merger transaction documents dated July 14, 2022 (the "Transaction Documents"), Sortis Holdings, Inc. ("Sortis") acquired Petitioners' preferred equity interests in Fellow Barber for a purchase price of $9,879,373. Petitioners declined to accept Sortis' publicly-traded stock as consideration. Instead, we received promissory notes (the "Notes") with an 18-month balloon, secured by pledges of Fellow Barber stock and the company's intellectual property. Petitioners also received certain proxy rights upon the occurrence of an uncured event of a default.

5.     In the same merger transaction, Sortis also acquired the common equity interests, for which it paid the remaining purchaser price in Sortis' publicly-traded stock.

6.     The Transaction Documents form the basis for Petitioners' claims in the involuntary petition in this case. As described below, Petitioners believe they have complied with the applicable rules at every stage. Petitioners sold their preferred equity interests in a valuable business to Sortis in exchange for Sortis' promise that it would pay, when due, the amounts owed under the Transaction documents, including the Note obligations. To date, Sortis has not paid a penny toward its obligations to Petitioners.

7.     On top of these losses, the costs and delays associated with enforcing our rights under the Transaction Documents have imposed considerable burdens on Petitioners. Sortis' present motion to divide this involuntary proceeding into two components runs the risk of further

PAGE 2 -  DECLARATION OF JACOB FURST

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

170495558.1

compounding the costs and delays already imposed on Petitioners. For that reason, Petitioners oppose it.

8.      The Notes matured on January 14, 2024. Sortis failed to make any payment on that date (or thereafter), resulting in an event of default under the Transaction Documents. In the last two months of 2023 and the first two months of 2024, Sortis had made it clear it would not pay the Notes in full, and it failed to demonstrate good faith efforts to raise the funds to do so. Instead, Sortis sought to simply unwind the merger, including amounts due under the Notes. Sortis sought to depart from Fellow Barber without addressing the Fellow Barber balance sheet, which Sortis had severely impaired during its rein. Sortis' proposal to unwind the transaction eighteen months after the fact was unacceptable to the Petitioners.

9.      Around this time, Sortis' financial distress had become increasingly a matter of public record, a fact that Sortis representatives repeatedly acknowledged to GEC by email and verbally. Certain acts of insolvency applicable to Sortis – such as entry of default judgments, an inability to pay a confessed judgment, and an eviction action pertaining to Sortis' primary lease – constituted further events of default under the Transaction Documents.

10.      On March 5, 2024, through counsel, Holland & Knight, GEC issued a notice of default and reservation of rights (the "Default Notice") to Sortis at its primary corporate office. In an ongoing email exchange that same day, GEC representatives informed Paul Brenneke, Sortis' chairman, of the incoming Default Notice and its contents. Federal Express confirmed its delivery of the Default Notice to Mr. Brenneke's attention on March 7, 2024.

11.      During this time, GEC insisted that that Sortis cease its practice of sweeping funds from Fellow Barber's bank accounts, sometimes multiple times per week, further impairing

PAGE 3 -  DECLARATION OF JACOB FURST

PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

170495558.1

Fellow Barber's balance sheet. Sortis' sweeps deprived Fellow Barber of funds to pay certain necessary items, including sales and service taxes that Fellow Barber had already collected from consumers. Petitioners insisted that Sortis cease the sweeps.

12.    On April 11, 2024, having received no response to the Default Notice – and Sortis' continuing its cash-sweeps – GEC exercised its proxy rights under the Transaction Documents, removing Sortis representatives from the Fellow Barber board. Again, in an email exchange, GEC representatives promptly informed Mr. Brenneke of this action. With its reconstituted board of directors, Sortis' ability to sweep Fellow Barber's operating cash was terminated.

13.    At this time, making no meaningful progress toward a resolution with Sortis on the Notes, Petitioners determined that communications would occur exclusively through counsel.

14.    Petitioners and GEC understood that they would be required to reclaim ownership of the pledged shares through available legal processes, and that after reclaiming the shares, they would need to find a purchaser. In May, 2024, the Petitioners began formative discussions with a potential third-party buyer (the "Buyer"). Those discussions continued and evolved over the succeeding months, ultimately resulting in the letter of intent discussed below.

15.    On June 21, 2024, through Holland & Knight, GEC provided Sortis with the statutorily prescribed notice (the "Sale Notice") of the upcoming Uniform Commercial Code ("UCC") sale of the pledged Fellow Barber shares. Sortis acknowledged its receipt of the Sale Notice and its awareness of the sale.

16.    On GEC's behalf, an experienced auctioneer, Mannion Auctions, LLC (the "Auctioneer"), was retained by counsel to conduct the auction process in a commercially reasonable manner in accordance with New York law. The Auctioneer established a due diligence

PAGE 4 -  DECLARATION OF JACOB FURST

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

data room and prepared a non-disclosure agreement, a bill of sale, and associated auction materials. The Auctioneer advertised the sale notice in the Oregonian (on 6/27/24 & 7/2/24), the New York Times (on 6/28/24), the Wall Street Journal (on 7/11/24), and the Washington Post (on 7/18/24 & 7/25/24).

17.     In advance of the auction, GEC, as collateral agent for the noteholders, conveyed to the Auctioneer its initial credit bid of $100,000. GEC was prepared to bid higher amounts in the event that other bidders appeared and submitted bids.

18.     On August 15, 2024, the Auctioneer conducted the UCC sale in accordance with the Sale Notice. Sortis did not attend the video auction. GEC was the sole bidder in attendance. The Auctioneer declared GEC's initial credit bid of $100,000 to be the prevailing bid.

19.     Counsel for GEC informed counsel for Sortis of the results of the auction on October 15, 2024.

20.     GEC executed a memorandum of sale on October 16, 2024. I understand that under New York statutes, no accounting is required unless the sale results in a surplus, and this sale did not (UCC 9-615(d)). GEC is not aware of any requirement under New York law that it issue a further notice of default, an additional demand, or a statement of deficiency. Through ongoing discussions among counsel, including after the UCC sale, Petitioners made it clear to Sortis that they continued to seek payment of outstanding amounts due under the Notes.

21.     As GEC exercised its various prepetition remedies, Sortis took no defensive action. At no time prior to its Answer here – and its companion New York state court complaint – did Sortis challenge the Transaction Documents or the merger. Sortis did not seek to set aside the Default Notice or GEC's exercise of its proxy rights. Sortis did not object to the UCC Sale Notice

PAGE 5 -  DECLARATION OF JACOB FURST

or the UCC sale itself. Sortis was aware of the UCC sale, but it did not even access the link to attend. Sortis learned the results of the auction and, again, it took no prepetition action to challenge any aspect of the sale.

22.     On October 25, 2024, following extensive negotiations, GEC entered into a letter of intent with the Buyer, an independent third-party, for the sale of the Fellow Barber shares, and a waiver of all rights in Fellow Barber, including intellectual property rights. The purchase price is $3.9 million in cash. The parties contemplated executing final transaction documents by year-end, but the closing is now on hold pending these proceedings.

23.     Because of Petitioners' obvious concerns regarding the potential disruption of this sale, Petitioners are prepared to share the terms of the acquisition, with the identity of the purchaser redacted. Petitioners are prepared to identify the purchaser in an unredacted document provided to the Court *in camera*.

24.     In the days after arriving at an agreed purchase price with an independent third-party purchaser, the Petitioners determined the deficiency remaining under the Notes. We did this in compliance with the deficiency calculation provisions found in UCC 9-615(f), as adopted by the State of New York. Petitioners (1) calculated all amounts due under their respective Notes, and (2) subtracted their proportionate share of the $3.9 million purchase price, and arrived at the remaining deficiency amount.

25.     Petitioners utilized the Uniform Commercial Code calculation formula as the basis for determining the claim amounts they included in the involuntary petition in this case.

26.     In late 2023 through the first few months of 2024, as it became clear that Sortis would be unable or unwilling to pay amounts due under the Notes, GEC worked with Sortis in an

PAGE 6 -  DECLARATION OF JACOB FURST

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

170495558.1

attempt to resolve its outstanding obligations, including consideration of (a) combining Rudy's and Fellow Barber in a packaged sale, or (b) GEC and other investors purchasing Rudy's from Sortis for the payment of certain Rudy's-related debts. GEC and Petitioners worked on these alternatives in the hopes of finding a solution that would work for all. Efforts to find a way for Sortis satisfy even a portion of its obligations under the Notes failed.

27.     Petitioners' decision to file the involuntary petition has no relation to the prepetition efforts to agree on a Rudy's transaction; nor is the involuntary petition part of a Rudy's hostile takeover attempt by Petitioners, as Sortis has suggested.

28.     Petitioners invoked the jurisdiction of the bankruptcy court by filing the involuntary petition due to an array of concerns including: (a) a lack of transparency, (b) the appearance of unequal treatment among creditors, (c) apparent transfers among insider Sortis entities, (d) a desire to preserve estate claims for review by a neutral party; and (e) Sortis' ongoing inability to pay its debts as and when due. The Petitioners' concerns were informed by their knowledge of: (i) transfers from Sortis' operating companies, such as Fellow Barber, through account sweeps initiated by or under the supervision of Sortis; (ii) the public withdrawal or settlement of litigation claims alleging amounts owed by Sortis with no disclosure of the terms; (iii) the publicly reported loss by Sortis of one or more apparent corporate opportunities to insiders; (iv) avoidance periods under the Bankruptcy Code; (v) the concerning number of Sortis' unpaid and overdue debts.

29.     Petitioners believe the transparency and supervision inherent in the bankruptcy process will assist creditors, employees, as well as existing and potential investors.

30.     Petitioners are unaware of any duty they had to confer with Sortis prior to filing the involuntary petition.

PAGE 7 -  DECLARATION OF JACOB FURST

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

170495558.1

I hereby declare that the above statement is true and correct to the best of my knowledge and belief. I understand that it is made for use as evidence in court and is subject to penalty for perjury.

DATED:  December 30, 2024.

s/*Jacob Furst*
Jacob Furst
Partner
GEC Fellow Barber Fund I LP
Generation Equity Capital, LLC,
as collateral agent

**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

170495558.1